## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : **Case No. 2:16-cr-00197** |
| **Plaintiff,** | : |
| | : **CHIEF JUDGE ALGENON L. MARBLEY** |
| **v.** | : |
| | : **FILED UNDER SEAL** |
| **ROMA L. SIMS,** | : |
| | : |
| **Defendant.** | : |

## OPINION & ORDER

This matter comes before the Court on a Motion for Compassionate Release filed by Roma L. Sims. (ECF No. 73). For the following reasons, Defendant's Motion is **DENIED.**

## I.      BACKGROUND

On June 22, 2018, Roma L. Sims was sentenced to 12 months of imprisonment for one count of Aggravated Identity Theft in violation of 18 U.S.C. §§ 1028A(a)(1) and (b)(2), and 1 day of imprisonment for one count of Wire Fraud in violation of 18 U.S.C. § 1343, to be served consecutively to each other. (ECF No. 51). The sentence in this case was also to be served consecutively to the Defendant's sentence of 100 months of imprisonment and 3 years of supervised release for wire fraud, conspiracy to engage in fraud, and aggravated identity theft, in Case No. 2:13-CR-00036 before Judge Edmund A. Sargus. (ECF No. 70 at 3). He is currently incarcerated at FCI Miami. (ECF No. 73 at 4). On August 27, 2020, Mr. Sims submitted a *pro se* Motion for Compassionate Release, seeking to be released due to the COVID-19 pandemic and his medical conditions that he alleges put him at greater risk of serious illness or death if he contracts the virus. (ECF No. 67). On October 26, 2020, this Court denied, without prejudice,

Mr. Sims' *pro se* Emergency Motion for Compassionate Release based on a finding that Defendant had failed to fully exhaust all appeals available to him internally. (ECF No. 72).

Now, Mr. Sims has submitted a Second Motion for Compassionate Release, arguing that he has set forth extraordinary and compelling reasons justifying his release and that the § 3553(a) factors favor his release. (ECF No. 73). The Government opposes his Second Motion on the grounds that Mr. Sims has not demonstrated extraordinary and compelling reasons entitling him to a sentence reduction and that the 3553(a) factors weigh strongly against his release at this time. (ECF No. 74). The Second Motion is now ripe for this Court's consideration.

## II.    STANDARD OF REVIEW

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a sentencing court may "reduce the term of imprisonment" of a defendant for "extraordinary and compelling reasons" once the exhaustion requirement or 30-day waiting requirement has been satisfied. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020). A district court's decision under Section 3582(c)(1)(A) will be reviewed for abuse of discretion and a district court "must supply 'specific factual reasons'" in support of its compassionate release decision. *United States v. Jones*, 980 F.3d 1098, 1101 (6th Cir. 2020). In *United States v. Jones*, the Sixth Circuit recently clarified the mechanics of compassionate review under 18 U.S.C. § 3582 where an incarcerated person has brought a motion on his own behalf. In *Jones*, the Sixth Circuit announced that U.S.S.G. § 1B1.13 is no longer considered an "applicable" policy statement "in cases where incarcerated persons file their own motions in district court for compassionate release." *Id.* at 1102.

The *Jones* court set forth a three-step framework for district courts to follow when considering motions for compassionate release. *Id.* at 1107–08. First, district courts must find whether "extraordinary and compelling reasons warrant" a sentence reduction. *Id*. Second, a

court must determine whether the reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* at 1108. Given that the *Jones* court found that U.S.S.G. § 1B1.13 was no longer applicable to motions brought by incarcerated persons on their own behalf, federal district courts may now skip this step in those instances and "have full discretion to define 'extraordinary and compelling' without consulting the policy statement." *Id.* Third, a court must consider the factors set forth in 18 U.S.C. § 3553(a) and determine whether, in the court's discretion, the reduction authorized by the statute is "warranted in whole or in part under the particular circumstances of the case." *Id.* (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

### III.    LAW & ANALYSIS

#### A.    Exhaustion of Administrative Remedies

When reviewing motions for compassionate release brought under 18 U.S.C. § 3582(c)(1)(A), district courts' first step is to ask: has the movant either fully exhausted all administrative rights or have 30 days lapsed since the movant received the warden's letter denying the request. If either prong is answered in the affirmative, courts then inquire if extraordinary and compelling circumstances justify release. 18 U.S.C. § 3582(c)(1)(A); *see also Alam*, 960 F.3d at 832. The Sixth Circuit has held that this requirement is not a jurisdictional rule, but a claim-processing rule that "binds the courts only when properly asserted and not forfeited." *Id.* at 833.

In his Motion, Mr. Sims submits that he has exhausted his administrative remedies. On May 20, 2020, the Defendant submitted a BP-8 to the warden of his facility, requesting compassionate release, which the warden denied on June 8, 2020 and June 10, 2020. (ECF No. 73 at 8). On June 18, 2020, Mr. Sims appealed his warden's denial of compassionate release

through a Request for Administrative Remedy, which his warden denied on July 23, 2020. (*Id.*).

After this Court denied Mr. Sims' *pro se* Emergency Motion for Compassionate Release, he then

submitted a BP-10 to the warden of his facility to again appeal the warden's denial of his request

for compassionate release. (*Id.* at 9). This Court finds that Mr. Sims met the administrative

exhaustion requirement because he has demonstrated that it has been more than thirty days since

his first formal request was filed with the BOP and his Second Motion for Compassionate

Release is ripe for consideration.

### B.    Extraordinary and Compelling Reasons

Under the analysis set forth in *Jones*, this Court must first determine whether

"extraordinary and compelling reasons" warrant a reduction in sentence under 18 U.S.C.

§ 3852(c)(1)(A)(i). This court has "full discretion to define 'extraordinary and compelling'

without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111. In his Motion, Mr.

Sims raises several health conditions that he alleges place him at greater risk of severe illness or

death from COVID-19, including obesity, hypertension, hypothyroidism, anemia, acute

pancreatitis, scoliosis, testicular hypofunction, and gynecomastia. (ECF No. 73 at 13–14). In

particular, he notes the evidence linking patients with acute pancreatitis to heightened risks of

multiorgan failure and death. (ECF No. 73 at 15). The Government opposes Defendant's

contention that his health conditions present "extraordinary and compelling reasons" on the basis

that his health conditions do not fall within the "certain specified categories" of conditions

referenced in U.S.S.G. § 1B1.13. (ECF No. 74 at 8).

As an initial matter, this Court recognizes the devastating impact of the COVID-19

pandemic and that prison populations are subject to heightened vulnerability. The spread of

COVID-19 in prisons has been well documented and FCI Miami, where Mr. Sims is confined,

had 24 active cases of COVID-19 among the incarcerated population and 27 active cases among staff as of December 10, 2020.[1] One incarcerated person has also died of COVID-19 in the care of FCI Miami, and 122 individuals incarcerated there had contracted the virus since the pandemic began.[2] Furthermore, COVID-19 puts Mr. Sims at particular risk. With respect to Mr. Sims's medical conditions, the CDC has indicated that individuals with hypertension and obesity might be at a higher risk for severe illness from COVID-19.[3] Mr. Sims has submitted medical documentation showing that he suffers from anemia, hypertension, pancreatitis, and obesity. (ECF No. 67 at 21; ECF No. 704). The Government does not dispute that Mr. Sims suffers from any of these health conditions. (ECF No. 74). This Court has discretion to determine for itself whether an incarcerated person has presented "extraordinary and compelling reasons" within the meaning of the First Step Act. Under the Sixth Circuit's decision in *Jones*, this Court is no longer bound by U.S.S.G. § 1B1.13 when considering compassionate release motions brought by incarcerated people on their own behalf. This Court finds that Mr. Sims's hypertension and obesity, which might place him at an increased risk of severe illness or death if he contracts COVID-19, constitute "extraordinary and compelling reasons."

### C.    Section 3553 Sentencing Factors Analysis

When an incarcerated person demonstrates "extraordinary and compelling reasons" which could justify a reduction in sentence, this Court must also consider "all relevant § 3553(a) factors before rendering a compassionate release decision." *Jones*, 980 F.3d at 1114. A court does not need to "specifically articulat[e]" every single Section 3553(a) factor in its analysis;

---

[1] *See* BOP, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/, last accessed 3/23/2021 at 4:00 p.m.
[2] *Id.*
[3] *See* CDC, *People Who Are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html, last accessed 3/23/2021 at 4:00 p.m.

rather, the record "as a whole" must indicate that the pertinent factors were taken into account by the court. *Id.* For a reviewing court, this record will constitute both the original sentencing proceeding and the compassionate release decision. *Id.* Section 3553(a) instructs a court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;
>
> (5) any pertinent policy statement ... issued by the Sentencing Commission ...;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In support of his Motion for Compassionate Release, Mr. Sims first notes that he received a low "Male Pattern Risk" score on the Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) developed by the United States Department of Justice. (ECF No. 73 at 17–18). He also highlights that he was convicted of fraud, a non-violent offense and that his adult

criminal history has been non-violent. (ECF No. 73 at 17). Since being incarcerated, Mr. Sims submits that he has had "zero disciplinary actions" and has participated in "extensive programming," including achieving English proficiency, earning his General Education Diploma, completing the Residential Drug Abuse Program, and completing other educational courses. (*Id.* at 18; ECF No. 70-6). Finally, he asserts that he will be released to a strong familial network who will provide him with housing. (ECF No. 73 at 19). The Government opposes and argues that the weight of the § 3553(a) factors warrant no justification for release, emphasizing the nature of the offense, its seriousness, and the fact that Mr. Sims has only served approximately 70% of his total sentence. (ECF No. 74 at 10–11).

On June 21, 2018, Mr. Sims was sentenced to 1 year and 1 day of imprisonment for one count of wire fraud in violation of 18 U.S.C. §§ 1343 and 2 and one count of aggravated identity theft in violation of 18 U.S.C, §§ 1028(a)(1) and (b)(2). (ECF No. 53). The sentence in this case was also to be served consecutively to the Defendant's sentence of 100 months of imprisonment and 3 years of supervised release for wire fraud, conspiracy to engage in fraud, and aggravated identity theft, in Case No. 2:13-CR-00036 before Judge Edmund A. Sargus. (ECF No. 73 at 3). Notably, on October 19, 2020, Judge Sargus denied a Motion for Compassionate Release by Mr. Sims. (*See United States v. Sims*, No. 2:13-cr-00036-EAS-NMK-1, ECF No. 187). Mr. Sims is still serving his 100-month sentence in Case No. 2:13-cr-00036-EAS-NMK-1 and has yet to begin serving his sentence of imprisonment in the case *sub judice* because it was imposed consecutively to Mr. Sims's other sentence. (ECF No. 53).

Mr. Sims was given a sentence below the guideline range as the result of a plea agreement. (ECF No. 54). By signing the plea agreement, Mr. Sims indicated his acceptance of a term of imprisonment for his conduct. (ECF No. 35). Following his guilty plea, the Government

moved for a downward departure from the sentence agreed upon by the parties and recommended that this Court impose a sentence of 1 year and 1 day of imprisonment to be served consecutive to his other term of imprisonment. (ECF No. 45). This Court ultimately imposed a sentence below the recommended guideline. (ECF No. 51). This sentence was imposed to reflect the seriousness of the offense, promote respect for the law as well as to afford adequate deterrence and to protect the public from further crimes of the defendant.

This Court must consider both the health risk to the individual and the interests served by continued incarceration based on the nature and seriousness of the offense. In imposing a sentence, a sentencing court's task is to "'impose a sentence sufficient, but not greater than necessary, to comply with purposes' of the statutory sentencing scheme." *United States v. Presley*, 547 F.3d 625, 630–31 (6th Cir. 2008) (quoting 18 U.S.C. § 3553(a)). This Court finds that Defendant's request would greatly undermine the statutory purposes of sentencing. Mr. Sims was sentenced with a downward departure from the sentencing guidelines as the result of a plea agreement, and has yet to serve a day of his sentence. Thus, none of the notions underlying his sentence for this offense have come to fruition yet. To provide compassionate release at this juncture would have the same effect as vacating his sentence. Furthermore, Mr. Sims is still serving a sentence of incarceration in another matter and this Court's granting of compassionate release would not grant him any relief for the "extraordinary and compelling reasons" he has raised.

### D. CONCLUSION

For these reasons, Mr. Sims's Motion for Compassionate Release (ECF No. 73) is **DENIED**. Defendant is not foreclosed from filing a subsequent Motion for Compassionate

Release when he commences serving the term of imprisonment in this matter.

**IT IS SO ORDERED.**

         /s/ Algenon L. Marbley

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  May 25, 2021**